(C. D. 509)

Alex Benecke *v.* United States

United States Customs Court, Second Division

(Decided June 5, 1941)

*Eugene R. Pickrell* (*Eugene A. Chase* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of ground steel rolls, not polished, used as parts of rolling mills in the cold-rolling of steel. Duty was levied thereon at the rate of 30 per centum ad valorem under the provision in paragraph 372 of the Tariff Act of 1930 for parts of machine tools. It is claimed that said articles are properly dutiable at but 27½ per centum ad valorem under paragraph 372 of said act as parts of machines not specially provided for.

The plaintiff offered in evidence the testimony of three witnesses. The first, Alexander Benecke, the plaintiff, testified that he was familiar with the merchandise involved herein; that each of the imported rolls consisted of a large cylindrical piece of steel weighing about 1,160 pounds and with its largest diameter measuring about 8¾ inches; that said rolls are made of steel; that the purchaser thereof furnished the witness with a blueprint showing the type of rolls desired, which blueprint was admitted in evidence as exhibit 1; that he had seen rolling mills in operation; that a rolling mill or a rolling mill plant consists of a large heavy steel structure from 8 to 12 feet high, used for the sole purpose of holding in position two or more rolls parallel to each other which revolve; that the rolls are fairly close together; that it is the purpose to drive a piece of steel between them; that he was familiar with the types of machine tools, such as lathes, milling machines, shaping machines, grinding machines, drilling machines, and boring machines; that he was familiar with the definition of machine tools contained in paragraph 372 of the Tariff Act of 1930; that the machine tools with which he was familiar came within that

definition; that in his opinion a rolling mill employing steel rolls such as those involved in the instant case was not a machine tool as defined in said paragraph 372, for the reason that it does not employ a tool for work on metal.

On cross-examination the witness testified in part as follows:

X Q. It is operated by power other than hand, is it not?—A. It is operated by power, yes.

. X Q. It employs the rolls, does it not?—A. It employs the rolls.

X Q. The rolls work on metal, do they not?—A. No, they don't work on metal.

X Q. What is the purpose of the rolls?—A. The purpose of the rolls is to reduce the body, the steel, in size and to give it a smoother surface.

X Q. So that it does work on steel, does it not?—A. Not in the sense in which I consider work on steel.

Judge DALLINGER. You said it diminishes the size of steel.

The WITNESS. It diminishes the size of the steel.

Judge DALLINGER. And polishes it?

The WITNESS. Polishes it, gives it a smoother surface.

By Mr. FITZGIBBON.

X Q. You say you sold grinding machines?—A. I have.

X Q. You say they are machine tools?—A. I do.

X Q. They diminish steel in size, do they not?—A. They reduce the steel but by a different method.

X Q. But they reduce the steel in size?—A. They reduce the steel in size and change the shape.

X Q. And shaping machines reduce steel in size and change the shape?—A. They reduce the size and change the shape.

On redirect examination the witness testified as follows:

R Q. What is the difference in the method of operation of a grinding machine and a rolling mill?—A. In a grinding machine a grinding wheel is employed. That grinding wheel removes material from the piece of metal which is being worked. It cuts off particles of the steel or metal of whatever the article is being machined. Therefore it reduces the weight; it becomes less. In a rolling mill, nothing like that takes place. The piece of metal or steel being worked, after having been worked, is the same weight as before; no metal has been reduced.

The second plaintiff's witness, Franklin D. Jones, an editor of technical books on the editorial staff of the magazine called "Machinery" since 1902, testified that previous to 1902 he had been a machinist for 7 years in the employ of various corporations; that as a machinist he had occasion to use machine tools, to wit, lathes, planers, shapers, drilling machines, and boring machines both horizontal and vertical that he had edited "The Machinery Handbook" a publication of 1,800 pages, which is used as a general reference book by engineers, executives, and workmen; that of this book 340,000 copies have been sold; that it was a leading authority in the British Empire as well as in Russia and Japan; that he had written numerous articles dealing particularly with machine tools; that he had been in close touch with the machine tool trade in the United States; that he was thoroughly familiar with

the operation of a rolling mill for cold-rolling steel; that in his opinion as an expert a rolling mill was not a machine tool because it does not conform to the only accepted meaning of that term; that in his opinion a machine tool is a power-driven complete metal-working machine, not portable by hand, having one or more tools or work-holding devices for progressively removing metal in the form of chips; and that in his opinion the common meaning is the same as the trade meaning of the term.

The witness then proceeded to testify in part as follows:

Q. Why doesn't a rolling mill come within that definition?—A. I think there are two reasons. One, it doesn't progressively remove metal in the form of chips; and second, in my opinion, it doesn't contain a tool in the commonly accepted meaning of the term in the industry.

Q. What is your understanding of the word "tool" in the industry?—A. As applied to that definition of a machine tool?

Q. Yes.—A. It is an adjunct; it is something that is an auxiliary. It is not an integral part of the machine, but something that is applied and removed and adjusted.

Judge DALLINGER. Just the same as a bit or drill on a borer?

The WITNESS. Yes, sir.

On cross-examination the witness testified as follows:

X Q. No machine tool will operate without a tool?—A. It will not.

X Q. So the tool is an integral part of the machine tool, isn't it?—A. I don't think it is an integral part of the construction.

X Q. But it must be necessary to have a tool if you want to operate the machine tool?—A. That is true.

X Q. Congress has defined a machine tool as "any machine operating other than by hand power which employs a tool for work on metal". What fault do you find with that definition?—A. You mean as applied to machine tools?

X Q. Yes.—A. I don't think a roll is a tool.

\*          \*          \*          \*          \*          \*          \*

Judge DALLINGER. In other words, in your definition you go further than the Congressional definition in that the tool must remove part of the metal?

The WITNESS. That is to be a machine tool.

\*          \*          \*          \*          \*          \*          \*

X Q. A grinding machine doesn't remove metal in chips?—A. It does.

X Q. It removes it in powder form, doesn't it?—A. They are microscopically chips; \* \* \*.

The third plaintiff's witness, Ingo Maddaus, manager of Coats Machine Tool Co. for the past 2 years, testified that previous to being manager of that company he had been engaged in business on his own account for about 10 years, in the course of which he had bought and sold machine tools of various kinds; that he is thoroughly familiar with the definition of machine tools in paragraph 372 of the Tariff Act of 1930, because he had helped to compose the language of that definition; that in his opinion a rolling mill was not a machine tool within the meaning of that definition, for the reason that rolls for

rolling mills are not tools; that they are the heart, soul, and body of the mill itself; and that without rolls in a rolling mill you have not got a machine at all.

The witness then proceeded to testify in part as follows:

Q. Is there any other reason why you think a rolling mill is not within that definition?—A. It doesn't employ a tool for working on metal.

Judge DALLINGER. What do you understand by a "tool for working on metal"?

The WITNESS. A tool is a cutter or a drill or a bit or grinding wheel, something that removes metal from the work piece.

Judge DALLINGER. In other words, unless it removes some of the metal it is not a tool in your opinion?

The WITNESS. It is not a tool, in my opinion.

By Mr. CHASE.

Q. Is that the understanding in the trade you have found?—A. Yes, sir.

Q. You testified that during your business experience you had dealt in various machine tools. Do all of those machine tools which you mentioned conform to the statutory definition of a machine tool?—A. They do.

On cross-examination the witness testified in part as follows:

X Q. You find no fault with the Congressional definition of a machine tool, do you?—A. No, sir, I do not.

X Q. There are machine tools that sever metal?—A. Yes.

X Q. And clean cut?—A. Yes.

X Q. They do not remove any metal?—A. They do.

X Q. When they merely sever?—A. There is a difference miscroscopically, if you like.

X Q. There are machine tools known as polishers?—A. Yes.

X Q. They polish with emery cloth?—A. Yes.

X Q. They don't remove any metal in pieces?—A. Not in pieces.

X Q. Or in chips?—A. In chips, microscopically.

Upon this record it is evident that there is no controversy as to the fact that a rolling machine is a machine. Moreover, there is no question of commercial designation arising in the instant case, as the plaintiff's witnesses have testified that the definition given by Congress of a machine tool in paragraph 372 of the Tariff Act of 1930 is both the common and ordinary meaning as well as the accepted meaning in the trade of that term. The only question to be considered is whether the steel rolls which are admitted to be integral parts of a machine (which is concededly operated by other than hand power) known as a rolling mill, are tools employed by said machine for work upon metal, within the meaning of said paragraph 372.

In paragraph 197 of the Tariff Act of 1909 appeared for the first time a specific provision for machine tools but without defining them. Because of that omission considerable litigation resulted. Nor did the Tariff Act of 1909 make special provision for machines not specially provided for. Under that act arose the case of *Myers* v. *United States*, 1 Ct. Cust. Appls. 226, T. D. 31260, wherein certain electrically-

driven floor-planing machines were held to be machine tools, for the reason that they performed by other than hand power work formerly performed by the aid of hand tools.

In *Sears, Roebuck & Co.* v. *United States*, 2 Ct. Cust. Appls. 329, T. D. 32055, which also arose under the 1909 act, the United States Court of Customs Appeals held certain hand-operated steel hair clippers not to be machine tools. In its decision the appellate court, after citing numerous dictionary definitions, said:

> It appears from these definitions that it is rather doubtful whether the term "machine tool" may be properly applied to such tools as are used in cutting hair or performing like services. The term seems rather to apply to such tools only as are used in mechanical work dealing with wood, metal, or stone. But however that may be, the term certainly always connotes the application of some kind of power to an implement or tool for its use and operation other than hand power alone. * * *

The case of *United States* v. *Georgia Pulp & Paper Manufacturing Co.*, 3 Ct. Cust. Appls. 410, T. D. 32998, involved the question of the tariff classification of certain large power-driven machines used to cut bark from logs with knives. The Government introduced commercial testimony tending to show that machine tools, as the term is understood in the trade, comprehended only such machines as worked upon metal; and upon the basis of this commercial testimony the court held that the machines in question were not machine tools within the meaning of paragraph 197 of the Tariff Act of 1909.

The case of *Massce & Co. et al.* v. *United States*, T. D. 34413–G. A. 7559, 26 Treas. Dec. 691, arose after the enactment of the Tariff Act of 1913 in which by paragraph 165 thereof the term machine tool was defined as "any machine operated by other than hand power which employs a tool for working on metal." The merchandise there involved consisted of a large variety of hand-operated and power-driven machines. The court (then the Board of General Appraisers) held certain of the machines to be machine tools within the meaning of said paragraph 165, and said:

> In view of the uncontradicted testimony of all of the witnesses who appeared in the case at bar, to the effect that a machine tool must of necessity perform its operations on metal with the aid of a cutting tool, and in view of the contradictory nature of such testimony with respect to all other phases of the question at issue herein, it will be readily seen that the previous court interpretations of the term "machine tools" should be further limited and restricted in their application; that in addition to a machine being operated by other than hand power and designed to work on metal it must also perform its operations with the aid of a cutting tool.

In the case of *John L. Vandiver* v. *United States*, T. D. 37555–G. A. 8142, 34 Treas. Dec. 200, this court (then the Board of General Appraisers) had before it for tariff classification a cold-rolling mill

which had been classified by the collector of customs at the port of Philadelphia at the rate of 20 per centum ad valorem under paragraph 167 of the Tariff Act of 1913 as a manufacture of metal not specially provided for, but which was claimed to be properly dutiable at only 15 per centum ad valorem under paragraph 165 of said act as a machine tool. In reversing the collector's classification, and holding the rolling mill to be a machine tool, this court, after citing various dictionary definitions and previous court decisions on the subject, said:

In the present case there is no question about this rolling mill being a complete machine ready to operate upon metal when the motive power is applied thereto; nor does there exist in our minds any doubt that the rolls in the machine which accomplish work formerly performed by hand hammers are tools. The combined mechanism is in our judgment, a machine tool in the sense that term is used in paragraph 165. If a heavy grinding roller is a tool, and when placed in position ready for the application of power becomes a machine tool, then the rolls in question, the function of which is to shape and form metal, are certainly tools, and, when embodied in a machine which works upon metal, the whole necessarily becomes a machine tool within the statutory definition hereof. Hand hammers are tools in that they are manual instruments which depend for their efficiency upon the strength and skill of the operator. The rolls in question do precisely the same work which was formerly accomplished by the hammers, only that they depend for their efficiency upon power other than that furnished by hand. A "forging machine" is defined by the Standard Dictionary as a "machine for drop or pressure forging," and a "forging press" as "a machine for forging iron by pressure between formers." To the same general class of machine tools belongs the rolling mill here in question, which in a sense may be said to forge the metal which is passed between its rollers.

Neither the *Vandiver* nor the *Massce* case, *supra*, was ever appealed.

The Congress, in paragraph 372 of the Tariff Act of 1922, for the first time provided for machines not specially provided for and imposed thereon a rate of 30 per centum ad valorem. But at the same time it retained the provision made in the 1913 law for machine tools, but increased the duty thereon from 15 to 30 per centum ad valorem. Hence, no serious litigation arose involving the competing provisions for machine tools and that covering machines not specially provided for under the 1922 law.

However, since the enactment of the 1930 act which likewise imposed a duty of 30 per centum ad valorem on machine tools as against 27½ per centum ad valorem imposed on machines not specially provided for, some litigation has arisen. In the case of *Keith Dunham Co.* v. *United States*, 26 C. C. P. A. 250, C. A. D. 24, there was involved the question of the dutiable classification of certain machines known as secators. These mechanisms were used to cut metal plates on a predetermined line by means of an oxyacetylene flame, emanating from the torch in the machine. Duty was levied thereon at the rate of 35 per centum ad valorem under paragraph 353 of the Tariff

Act of 1930 as "articles having as an essential feature an electrical element or device, such as * * * portable tools." It was claimed that said articles were properly dutiable at the rate of 30 per centum ad valorem under paragraph 372 of said act as machine tools. In affirming the decision of this court overruling said claim, the appellate court said:

The meaning of the statutory definition of "machine tools" in paragraph 372, *supra*, is not free from ambiguity. Accordingly we may consult the history of the act. * * *.

\* \* \* \* \* \* \*

The legislative history of paragraph 372 of the Tariff Act of 1930 supports our belief that the "secator" is not a machine tool in a tariff sense. The congressional definition of "machine tools" appeared for the first time in paragraph 165 of the Tariff Act of 1913 and has been carried word for word into the subsequent Tariff Acts of 1922 and 1930.

In the Summary of Tariff Information, 1920, pages 264, 265, we find under the title "General Information" the following description of machine tools with reference to paragraph 165 of the Tariff Act of 1913:

*Description.*—The machines enumerated in this paragraph are certain specialized types producing widely varying commodities or utilities. The term *machine tools* has no very definite or fixed meaning. There is one class of power-driven machines designed to produce only one article in great numbers with a considerable degree of automatic action, as screw-making machines, bolt threaders, nut tappers, gear cutters, and spring-making machines. They usually turn out a completed product or one requiring little subsequent finishing. These are styled *special machines.*

The other class, properly called machine tools, consists of power-driven forming or shaping machines which are not special, but are adaptable for all kinds of work within their classes on all shapes of metal stock or raw material. Machine tools are so defined in the act of 1913 as to include both these classes.

Machine tools are also discussed in the Summary of Tariff Information, 1929, at page 812, as follows:

MACHINE TOOLS

*Description and uses.*—Machine tools are more or less massive apparatus for working metal. The principal parts of the machine tool are the frame, the driving mechanism, the device for holding or moving the material or tool, and the actual tool that shapes the material being worked. Typical basic machine tools are the lathe, which revolves the work while a cutter is held against it; the planer, which moves the work forward and back under a planing tool; the drilling machine for drilling holes; the miller, in which the work is shaped by the action of revolving toothed cutters; and the grinding machine, in which abrasive wheels are used to remove metal.

Counsel for the plaintiff in his excellent brief filed herein contends that the language of the United States Court of Customs and Patent Appeals in the *Keith Dunham Co.* case, *supra*, plainly implies that the decision in *Vandiver* v. *United States, supra,* gave too broad a meaning to the term "machine tools."

Counsel also calls our attention to the provision in the recent trade agreement with Switzerland (T. D. 48093, 69 Treas. Dec. 74 at p. 84) where the rate of duty is reduced from 27½ to 25 per centum ad valorem

under paragraph 372 of the Tariff Act of 1930 on "machines not specially provided for, finished or unfinished, for determining the strength of materials or articles in tension, compression, torsion, or shear." Inasmuch, however, as the provision in question does not limit the material or articles to be tested to metals, we fail to see what bearing the provision referred to may have in the determination of the instant case.

Neither are we impressed with the contention that machine tools must necessarily be limited to those which remove chips or other particles from the metal worked upon; and that the rollers before us do not comply with such requirements. It is admitted that polishing machines and so-called shaping machines are machine tools; and it cannot be denied that forging hammers are likewise machine tools, and that they certainly change the shape of the metal just as do the imported rolls herein. As a matter of fact, it is uncontradicted that the rollers at bar not only change the shape but also polish the sheets of metal which pass between them, and undoubtedly, as in the case of other polishing or cutting machines, some microscopic particles or "chips" are removed from the metal.

In our opinion, so far as the instant merchandise is concerned, there is no ambiguity in the definition of machine tool as set forth by Congress in paragraph 372 of the Tariff Act of 1930. It is admitted that the rolling mill is a machine, and that it is operated by other than hand power. It is also evident that the material operated upon is metal. The single inquiry is whether it is the roll that constitutes the tool which does the work upon the metal. We think that the so-called rolls are tools; and that they are just as much tools as if they were knives which cut metal. They certainly are as much tools as are polishers, shapers, or forging hammers, all of which are admittedly tools, and the machines which operate them machine tools.

In conclusion we can do no better than to reiterate in substance the language of this court in *Vandiver* v. *United States, supra:*

In the present case there is no question about this rolling mill being a complete machine ready to operate upon metal when the motive power is applied thereto; nor does there exist in our minds any doubt that the rolls in the machine which accomplish work formerly performed by hand hammers are tools. The combined mechanism is in our judgment, a machine tool in the sense that term is used in paragraph 165. If a heavy grinding roller is a tool, and when placed in position ready for the application of power becomes a machine tool, then the rolls in question, the function of which is to shape and form metal, are certainly tools, and, when embodied in a machine which works upon metal, the whole necessarily becomes a machine tool within the statutory definition hereof.

      \*      \*      \*      \*      \*      \*      \*

All claims of the plaintiff are therefore overruled and the classification of the collector is affirmed. Judgment will be rendered accordingly.